WILLIAM URBAUER, Appellant, *v.* WILLIAM CRANSTOUN, as Executor, etc., of NICHOLAS H. CHESEBROUGH, Deceased, Respondent.

*Will — when a power of sale attached to a trust created thereby is revoked by a codicil — when a deed of an executor and of parties to whom he is directed to convey land will not convey a good title.*

A testator by his will gave his residuary estate to his executors in trust "to pay over the net rents, interests and income derived from the said residue of my estate to my beloved wife, Henrietta Chesebrough, for and during the term of her natural life; and upon the further trust to sell and dispose of my real estate, whenever they in their discretion shall deem it advisable, for the best interests of my estate so to do, * * * and the proceeds arising from such sale or sales and the principal monies belonging to my personal estate, which may be received by them to invest and keep invested from time to time, and to collect the interest and income therefrom and pay over the same to my said wife, for and during the term of her natural life as hereinbefore directed;" and upon the further trust, after the death of his said wife, to assign, transfer, convey and pay over the said residue of his estate to certain persons named.

The testator subsequently executed a codicil to his will, which recited his wife's death, and provided: "I do change and alter so much of the clause in my said will relating to the residue of my said estate, so far as the same affected and applied to my said wife and the payment to her of the net rents, interest and income derived from the said residue of my said estate and the interest and income derived from the investment of the proceeds of the sale or sales of my real estate. And I do by this codicil direct my surviving executor in my said

will named to invest such net rents, interest and income that may be collected by him in some safe securities whenever he can do so, or to deposit the same in some safe Savings Bank or Trust Company, so that the same shall draw interest until the full end and expiration of two years after my decease; and upon the full end and expiration of two years after my decease — instead of after the death of my said wife as in my said will mentioned, to assign, transfer, convey and pay over the said residue of my said estate and all monies realized from the investment of the same, or from the investment of the net rents, interest or income derived therefrom, that may be in his hands at that time," to certain persons named.

*Held,* that a person to whom the surviving executor had contracted to sell real estate owned by the testator, should not be required to specifically perform the contract upon receiving a conveyance executed by the surviving executor, and also by the persons to whom the executor was directed by the codicil to convey the premises at the end of two years;

That the codicil operated to revoke the gift to the executor in trust and the power of sale given in connection with it, and also the devises and bequests in trust, and that the executor's sole power over the real estate was to collect the rent and convey it to the remaindermen at the end of two years;

That, until the expiration of the two years, the deed of the remaindermen would not convey the legal title.

O'BRIEN, J., dissented.

APPEAL by the plaintiff, William Urbauer, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 22d day of June, 1900, upon the decision of the court rendered after a trial at the New York Special Term.

*Frederick W. Holls,* for the appellant.

*P. Harwood Vernon,* for the respondent.

INGRAHAM, J.:

The question to be determined in this action depends upon whether there is given to the defendant, as executor and trustee under the last will and testament of Nicholas H. Chesebrough, a power to sell certain real estate situated in the city and county of New York. The testator, who resided in the State of New Jersey, owned certain real estate in the city of New York. By his will, after certain specific bequests, he gave all the rest and residue of his estate to his executors in trust, to hold the same and to collect the rents, incomes and interests thereon, and "to pay over the net rents, interests and income derived from the said residue of my estate to

my beloved wife, Henrietta Chesebrough, for and during the term of her natural life; and upon the further trust to sell and dispose of my real estate, whenever they in their discretion shall deem it advisable, for the best interests of my estate so to do, * * * and the proceeds arising from such sale or sales and the principal monies belonging to my personal estate, which may be received by them to invest and keep invested from time to time, and to collect the interest and income therefrom and pay over the same to my said wife, for and during the term of her natural life as hereinbefore directed;" and upon the further trust, after the death of his said wife, to assign, transfer, convey and pay over the said residue of his estate to certain persons named.

That this power of sale was given in connection with the trust which was to continue during the life of his wife, to enable the executor to change the investment, is apparent from the express provision that he was to invest the proceeds arising from such sale of the real estate, to collect the interest and income thereof, and to pay the same to the wife of the testator. That such power of sale did not continue beyond the termination of the trust is also evident from the express provision directing the executor, after the death of the wife, to assign, transfer, convey and pay over the said residue of the estate and all moneys realized from the investment of the same unto the persons named. After the termination of the trust the testator directed an immediate conveyance of all the property held in trust to the remaindermen. There would be no necessity for a power of sale after the termination of the trust, when the property itself held by the trustee was, upon the death of the wife, to be at once assigned, transferred, conveyed and paid over to the remaindermen.

A codicil executed in 1899, two years after the execution of the will, provides " And whereas, since making my said last will and testament, my wife has departed this life: Now, therefore, by this codicil I do change and alter so much of the clause in my said will relating to the residue of my said estate, so far as the same affected and applied to my said wife and the payment to her of the net rents, interest and income derived from the said residue of my said estate and the interest and income derived from the investment of the proceeds of the sale or sales of my real estate. And I do by

this codicil direct my surviving executor in my said will named to invest such net rents, interest and income that may be collected by him in some safe securities whenever he can do so, or to deposit the same in some safe Savings Bank or Trust Company, so that the same shall draw interest until the full end and expiration of two years after my decease; and upon the full end and expiration of two years after my decease — instead of after the death of my said wife as in my said will mentioned — to assign, transfer, convey and pay over the said residue of my said estate and all monies realized from the investment of the same, or from the investment of the net rents, interest or income derived therefrom, that may be in his hands at that time," to certain persons named.

By this codicil it is quite apparent that the testator revoked the gift to his executor in trust, and the power of sale in connection with it and the devise and bequests in trust were thereby revoked. The codicil does not attempt to create a trust. It directs his executor to invest the net interest and income that may be collected by him for two years, and at the expiration of that two years to assign, transfer, convey and pay over all the residue of the testator's estate to the persons named. It seems to me that by this provision the legal title of the testator to the real estate descended to his heirs at law, subject to the execution of the power to convey to the persons named two years after his decease. There was no sale of his real estate contemplated. No title to this real estate was given to the executor, and there was no intention to vest in him any power over it, except so far as was necessary to collect the rent and convey it to the remaindermen at the end of two years.

The executor made a contract to sell this real estate in the city of New York, and the question presented was whether the executor could convey a good title to the property. The action was brought by the vendee to recover the amount paid upon the execution of the contract, together with his expenses of examining title. The defendant in his answer asked the court to specifically enforce the contract. The court decreed a specific performance upon condition that the defendant deliver to the plaintiff, "in connection with defendant's deed, mentioned in the complaint, a good and sufficient deed from the trustees" of the premises described, executed by the persons to whom the executor was directed by the codicil to convey

the premises at the end of two years; and that upon the delivery to the plaintiff of two conveyances the plaintiff pay to the defendant or to his attorneys the residue of the purchase money mentioned in the contract. It appeared in evidence that the testator died on the 6th of April, 1899, and that his last will and testament was admitted to probate in New Jersey; that he left personal estate aggregating about $40,000; that he was in debt at the time of his death to the amount of about $47,000 or $48,000, and that the legacies given by the will as modified by the codicil amounted to about $21,500. There was no evidence, however, of what, if any, other real estate the testator died seized. If a sale of the testator's real estate were necessary to pay debts or legacies, resort could be had to the statute for that purpose, but there is nothing in the will or codicil that indicates an intention to give to his executor an implied power of sale for the purpose of paying these legacies or debts. To compel the plaintiff to accept this title would not, we think, be justified, as it would at least be a doubtful title. The parties to whom the property should be ultimately conveyed have certainly yet no title, as the two years from the death of the testator have not expired; and it is not alleged that the executor has conveyed the property as directed by the will. As it was quite clear that the executor could not convey any title to the plaintiff and thus complete his contract of sale, and that the deed of the remaindermen would not convey the legal title, the judgment below cannot be sustained.

It follows that the judgment appealed from must be reversed, with costs, and as there seems to have been no dispute as to the facts and as to the right of the plaintiff to recover, in case the defendant could not give a good title, judgment should be entered in favor of the plaintiff for the amount claimed in the complaint, with costs in this court and in the court below.

VAN BRUNT, P. J., and MCLAUGHLIN, J., concurred; O'BRIEN, J., dissented.

Judgment reversed, with costs, and judgment ordered for plaintiff, with costs.